THOMAS O'DONNELL, FOR USE, ETC.,

v.

THE CHICAGO & ALTON RAILWAY COMPANY.

*Garnishment—Appeals from County Court to this Court—Jurisdiction of County Judges—Statutes—Limitations—Justice's Judgments.*

1.  County Judges do not have, and did not in 1877 have, any jurisdiction to act as Justices of the Peace; the proviso contained in Sec. 7 of the County Court Act of 1874 as amended May 21, 1877, being inoperative and void in the absence of any provision of law conferring such jurisdiction.

2.  An appeal lies from the County Court directly to this court from a judgment in a garnishment proceeding, such proceeding being a common law case within the meaning of the statute.

3.  A Justice's judgment is "an evidence of the indebtedness in writing" within the meaning of Sec. 16 of the Statute of Limitations, and the time within which an action may be brought thereon is ten years.

*Woodworth v. Paine,* Breese, 374, distinguished.

[Opinion filed January 11, 1887.]

APPEAL from the Circuit Court of Will County; the Hon. C. B. GURNSEY, Judge, presiding.

Messrs. HALEY & O'DONNELL, for appellant.

Messrs. J. R. FLANDERS and C. A. HILL, for appellee.

BAKER, P. J. On the 30th day of June, 1879, Thomas Delaney and Peter Mackin, partners under the firm name of Delaney & Mackin, recovered a judgment before a Justice of the Peace of Will County against Thomas O'Donnell for $58.86 and costs; and on the 14th of August, 1879, an execution was issued on said judgment, and said execution afterward returned by the Constable "no property found." After such return and before the commencement of this garnishment proceeding Peter Mackin, one of the judgment creditors, died. On the 21st day of December, 1885, Delaney, the surviving partner, filed an affidavit with the Justice of the Peace and sued out a garnishee summons upon the judgment, which summons was served upon the Chicago & Alton Railroad Company, as garnishee of said Thomas O'Donnell. From the judgment rendered by the Justice in the matter of this garnishment an appeal was taken to the County Court of Will County.

It appears from the record that at the trial in the County Court it was shown that at the time the garnishee summons was issued and served the railroad company had in its hands $150 in money that belonged and was due to O'Donnell, but the court found that the judgment in favor of Delaney & Mackin and against O'Donnell, upon which the garnishee proceeding was based, was at the time of the commencement of such proceeding before the justice barred by the Statute of Limitations, and therefore entered a judgment dismissing the garnishment and against Delaney for costs. Delaney took this appeal to this court from the judgment of the County Court thus rendered.

Upon the submission of the cause in this court, the Chicago & Alton Railroad Company and Thomas O'Donnell entered their motion to dismiss the appeal for want of jurisdiction in this court to hear and determine the same; and two grounds are relied upon to sustain the motion.

In the first place it is claimed that the County Judge in try-ing this cause was sitting and acting in the capacity of a Jus-tice of the Peace, and that section seven of the County Court Act of 1874, as amended May 21, 1887, (Laws of 1887, page 77) provides that "appeals from the County Judge when sit-ting as Justice of the Peace, shall be taken to the Circuit Court as now."

We are of opinion this position is not tenable. We are unable to find either in the Constitution of the State, or in any statute now in force or that was in force when this amendment was enacted in 1877, any provision of law giving to County Judges the right or power to sit as Justices of the Peace or exercise jurisdiction as such. The fourteenth section of the County Court Act of 1849 (Laws of 1849, page 62), provided that the County Judge "shall have the same civil and criminal jurisdiction as the Justices of the Peace in this State," but by the 99th specification of section one of the Repealing Act of March 31, 1874, this County Court Act of February 12, 1849, was expressly repealed. See R. S. 1874, 131, pp. 1012 and 1016. Our conclusion is that County Judges do not now have, and did not in 1877 have any jurisdiction to act as Jus-tices of the Peace; that the *proviso* contained in section seven as amended May 21, 1877, was probably enacted by inadvert-ence, and at all events is inoperative and void in the absence of any provision of law giving to County Judges the right to exercise jurisdiction as Justices of the Peace. Other amend-ments that were made by this act of May 21, 1877, to said section seven, conferred upon County Courts concurrent juris-diction with the Circuit Courts in all cases of appeals from Justices of the Peace and police magistrates, but this jurisdic-tion was given to the County Courts as County Courts and courts of record and was to be exercised by them as such, and was in no sense a jurisdiction conferred upon the County Judges to be exercised by them in the capacity of Justices of the Peace.

The further claim is made, upon the motion to dismiss, that this is neither a common law nor an attachment case, but a proceeding begun and prosecuted under the provisions of the

Garnishment Act and based solely upon a judgment previously rendered and for the sole purpose of obtaining satisfaction of that judgment, and that therefore the appeal should have been taken to the Circuit Court and not to this court. Section 123, of the County Court Act, as it now stands, reads as follows: " Appeals and writs of error may be taken and prosecuted from the final orders, judgments and decrees of the County Court to the Supreme Court or Appellate Court, in proceedings for the confirmation of special assessments, in proceedings for the sale of lands for taxes and special assessments, and in all common law and attachment cases, and cases of forcible detainer and forcible entry and detainer. Such appeals and writs of error shall, when not otherwise provided, be taken and prosecuted in the same manner as appeals from and writs of error to Circuit Courts."

Sec. 122 of the act makes provision for appeals from the final orders, judgments and decrees of the County Courts in all matters, except such as are provided for in Sec. 123, to the Circuit Court, and for trials *de novo* in the latter court.

In our opinion the case was properly appealed to this court, and the motion to dismiss should not prevail. Our reasons for so holding may be briefly stated. The appeal from the judgment of the Justice of the Peace in this garnishment proceeding was to either the County or the Circuit Court, as the party appealing might elect. In cases where, as here, the appeal is taken to the County Court, the claim urged by the proponents of the motion would lead to results anomalous and unreasonable; such as a statutory right to three different trials in as many different tribunals before the case is submitted to the court of errors, and the right of appeal to and trial *de novo* in an Appellate Court of concurrent jurisdiction. The statute should not receive a construction that terminates in such absurd conclusions unless it can not be avoided without doing violence to their language. If the acts of the General Assembly can reasonably be construed otherwise, then such results should not be considered as within the legislative intention. It is plain the case at bar does not fall within the provisions of Sec. 123, allowing an appeal from the County

to the Appellate Court, unless it be upon the ground it is either a common law or an attachment case. Waiving the question whether a garnishment proceeding based upon a prior final judgment against a debtor and a return of *nulla bona* can properly be regarded as an attachment case, we think it should be held to be a common law case within the intent and meaning of Sec. 123. If the garnishment proceeding is considered as a suit or case in and of itself, which the statute authorizes the judgment creditor to prosecute for his own use and benefit against the debtor of his judgment debtor, then it is an action of debt or assumpsit, both of which we all know are common law cases. In Webster v. Steele, 75 Ill. 544, May v. Baker, 15 Ill. 89, Wilcus v. Kling, 87 Ill. 107, and numerous other cases, it was held by the Supreme Court that garnishment being a legal proceeding given by statute, it only entitles a party to recover such indebtedness as can be recovered by an action of debt or *indebitatus assumpsit* in the name of the attachment or judgment debtor against the garnishee. If, on the other hand, the garnishment is regarded as but an adjunct of the original case, then it is in the nature of process to obtain satisfaction of a judgment and is in effect an execution, and a part of the proceedings of the case originally commenced, and this even though it is docketed as a separate suit; and it is manifest that the original suit, in which the judgment against O'Donnell for $58.86 and costs were recovered, was an ordinary common law case. See. Bear v. Hays, 36 Ill. 280; M. C. R. R. Co. v. Keohane, 31 Ill. 144; Moore v. Hamilton, 2 Gilm. 429; Beecher v. James, 2 Scam. 462; Roberts v. Dunn, 71 Ill. 46; Chanute v. Martin, 25 Ill. 63.

It was error in the County Court to rule that the five years limitation, fixed by Sec. 15 of the Limitation Act of 1872, barred the judgment against O'Donnell before the Justice of the Peace. Section 16 of the Limitation Law governs in respect to judgments recovered before Justices of the Peace. Such a judgment is "an evidence of indebtedness in writing," and the limitation in regard thereto is ten years. This was expressly held by us in an opinion filed at this term in the case

of Aarvig v. Kellogg. It was there decided that Bemis v. Stanley, 93 Ill. 230, did not govern in the matter of a judgment before a Justice of the Peace in this State, as a judgment of that character was not there involved, and said Sec. 16 of the Limitation Act was not mentioned or considered.

Woodworth v. Paine, Breese, 376, cited by appellee, is not in point; there the language of the statute was "instrument of writing," while the language of the section of the statute now under consideration is "evidence of indebtedness in writing." A judgment would be included by the latter language, but not by the words that were used in the statute passed upon in Woodworth v. Paine. We may also say that the plain implication from what was said by the court in Hay v. Hayes, 56 Ill. 342, is that an execution may issue on the judgment of a Justice of the Peace at any time within seven years after the rendition of such judgment, provided only an execution had been issued thereon within a year from the date of such judgment.

For the error mentioned, the judgment of the County Court is reversed, and the cause remanded to that court for further proceedings in conformity with the views herein expressed.

*Reversed and remanded.*